# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROCKLEDGE DEVELOPMENT CO.,

    Plaintiff,

    v.

WRIGHT TOWNSHIP, et al.,

    Defendants.

CIVIL ACTION No. 3:08-CV-2064

(JUDGE CAPUTO)

## MEMORANDUM

Now before the Court is the Defendants' Motion for Judgment on the Pleadings. (Doc. 12.) For the reasons discussed below, the Court will grant this motion in part and deny it in part. Additionally, some portions of the Plaintiff's Complaint (Doc. 1) will be dismissed for the reasons discussed below. The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 ("federal question") and 1367 ("supplemental").

## BACKGROUND

**I. Factual Background**

The facts alleged in Plaintiff's Complaint are as follows:

Plaintiff Rockledge Development Co. ("Rockledge") is a Pennsylvania corporation who develops real estate. (Compl. ¶¶ 5, 9.) Defendants are: Wright Township, a duly existing unit under the laws of the Commonwealth of Pennsylvania, along with township supervisors Daniel Frascella, Louis Welebob, Jr., Donald P. Zampetti, Jerome Uram,[1] Joseph J. Good, and Matthew Houton. (Compl. ¶ 6.)

---

[1] Plaintiff's Complaint lists "Gerard Uram," but in Defendants Answer the name of the township supervisor is identified as "Jerome Uram." (Answer ¶ 6.)

Rockledge was the owner and developer of the Phase III, Section 4B, portion of the Deerfield Acres Subdivision ("Deerfield Acres") located in Wright Township, Pennsylvania. (Compl. ¶ 9.) On July 15, 1997, Rockledge received Final Plan Approval from Wright Township for the development. (Compl. ¶ 9.) In the Final Plan approval, Wright Township accepted the proposed roads in Deerfield Acres, including the storm water drainage structures associated with those roads. (Compl. ¶ 16.) Wright Township has and enforces a policy[2] not to accept dedication of roads, not to issue zoning or building permits, not to issue occupancy certificates, and to withhold any other necessary permits or approvals when Wright Township determines, in its sole discretion, that additional improvements are needed in any subdivision which has received final plan approval. (Compl. ¶ 17.) This policy is applied regardless of how long ago final approval was given, or whether the developer continues to own any real estate in the development. (Compl. ¶ 17.) "There is no procedure providing notice and opportunity for a hearing under Pennsylvania law or the Wright Township ordinance where a post-Final Plan Approval . . . violation . . . has occurred." (Compl. ¶ 37.)

Lot 89 was the last lot in Deerfield Acres owned by Rockledge. (Compl. ¶ 10.) A deed of easement by Rockledge was recorded on February 20, 2003, allowing a fifteen (15) foot-wide drainage easement in the setback area of Lot 89. (Compl. ¶ 18.) On September 8, 2003, another deed of easement was recorded allowing a swale to be located in a twenty

---

[2] Section 131-150 A.1. of the Subdivision and Land Development Ordinance of Wright Township states that: "All major subdivision and/or major land development plans shall include the following information, notes and data upon the appropriate sheets: (1) The Township Engineer reserves the right to require necessary changes from design standard to suit actual field conditions." (Compl. ¶ 13.)

2

(20) foot-wide drainage easement in the setback area of Lot 89. (Compl. ¶ 18.) These easements were granted in response to a demand from Wright Township for such easements and the threat by Wright Township that a maintenance bond posted by Rockledge with Wright Township would not be released. (Compl. ¶ 19.)

The purchasers of Lot 89, the Buckeys, gave Rockledge a first lien mortgage from the as part of the compensation for the sale of the property closing on March 23, 2005. (Compl. ¶¶ 8, 11.) Mr. Buckey applied for and received a driveway permit from Wright Township on May 5, 2005. (Compl. ¶ 22.) After a complaint to the township by a neighbor of Lot 89, the Buckeys were instructed "not to touch anything until the complaint was resolved." (Compl. ¶ 23.) On June 20, 2005, the Buckeys received a letter stating "no zoning or building permits have been issued for any construction on Lot 89, Deer Run Drive, Deerfield Acres and no permits will be issued until any and all violations of other agencies including the Luzerne County Conservation District and the Pennsylvania Department of Environmental Resources have been complied with." (Compl. ¶ 25.) Wright Township believed that a drainage problem on Lot 89 made the lot un-buildable and had to be rectified by building a swale across the front of Lot 89 to connect with a swale on Lot 90 before any building permits could be issued. (Compl. ¶ 28.)

**II. Procedural Background**

On November 17, 2005, the Buckeys filed a complaint in the Luzerne County Court of Common Pleas against Rockledge alleging that Rockledge failed to disclose a drainage or flooding problem on Lot 89. (Compl. ¶ 11.) On March 3, 2006, Rockledge filed a complaint against the Buckeys for default on their promissory note and mortgage. (Compl. ¶ 21.)

3

On November 13, 2008, Rockledge filed a complaint in the United States District Court for the Middle District of Pennsylvania against the Defendants. (Doc. 1.) On November 5, 2009, Defendants filed a Motion for Judgment on the Pleadings. (Doc. 12.) Both parties have fully briefed this motion, and it is now ripe for disposition.

## LEGAL STANDARD

Under Rule 12(c) of the Federal Rules of Civil Procedure, after the pleadings are closed, any party may move for judgment on the pleadings. A Rule 12(c) motion is designed to provide a means for disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice. *See* CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367. A court should only grant a motion for judgment on the pleadings if it is clear that the merits of the controversy can be fully and fairly decided in this summary manner. *See id.* at § 1369.

In deciding a motion for judgment on the pleadings, a court must consider the facts alleged in the pleadings and the inferences drawn from these facts in the light most favorable to the nonmoving party. *See Oxford Assocs. v. Waste Sys. Auth. of E. Montgomery County,* 271 F.3d 140, 144-45 (3d Cir. 2001); *McCoy v. Southeastern Pa. Transp. Auth.,* No. 01-5881, 2002 WL 376913 at *1 (E.D. Pa. 2002). The motion may only be granted if there are no factual allegations in the pleadings which, if proven, would allow the nonmoving party to recover. *See Oxford Assocs.*, 271 F.3d at 144-45; *McCoy,* 2002 WL 376913 at *1.

**DISCUSSION**

Plaintiff's complaint contains three counts. At Count I, Rockledge alleges that the Defendants' have violated its substantive due process rights. At Count II, Rockledge alleges that the Defendants' have violated its procedural due process rights. And at Count III, Rockledge alleges that a regulatory taking has occurred over Rockledge's property without just compensation.

**I. Standing**

While not specifically argued in the motion presently before the Court, the first issue which must be addressed is whether Rockledge has standing to bring these constitutional claims.[3] Even if not specifically raised in the present motions, this Court may raise the issue of standing *sua sponte*. *Chong v. Dist. Dir., I.N.S.*, 264 F.3d 378, 383 (3d Cir.2001) ("[T]he Supreme Court has held that courts must decide Article III standing issues, even when not raised by the parties, before turning to the merits." (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998))).

"[S]tanding jurisprudence contains two strands: Article III standing, which enforces the Constitution's case or controversy requirement; and prudential standing, which embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.'" *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11 (2004) (citations omitted). The minimum constitutional requirements for standing are that: (1) the Plaintiff has suffered an "injury in fact," meaning "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent," (2) the injury must be "fairly traceable to the

---

[3] The Defendants also raise as their first affirmative defense that Rockledge lacks standing to bring these constitutional claims. (Answer ¶ 41.)

5

challenged action of the defendant," and (3) it must be likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations, quotation marks, and alterations omitted). Additionally, to have standing, a plaintiff must meet the prudential limitations on standing. The prudential limit relevant here is the requirement that "the plaintiff must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). To satisfy the relevant prudential limitations, Rockledge may act on behalf of its own interests, but may not act on behalf of the interests of its mortgagor, the Buckeys.

"Property interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55 (1979). "Pennsylvania subscribes to the lien theory of mortgages, i.e., a mortgage does not transfer title to the mortgagee; rather, it constitutes a lien on the mortgagor's interest, thereby securing the mortgagee's loan." *General Credit Co. v. Cleck*, 609 A.2d 553, 557 (Pa.Super. 1992) (citing *In re City of Philadelphia*, 63 A.2d 42 (1949)). Here Rockledge does not allege that it is the owner of Lot 89. (Compl. ¶ 8, 11.) Rockledge alleges that Lot 89 was sold to the Buckeys, and that it retained only a mortgage interest in the property. (Compl. ¶ 8, 11.) While Rockledge may have a stronger right if the Buckeys have defaulted (Compl. ¶ 21), a lien interest in Lot 89 alone is a sufficient protected property interest. *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983) (mortgagee entitled to due process before pending tax sale impacting interests). In the present case, the value of the lien interest held by Rockledge as mortgagee could be impacted by Wright Township's allegedly unconstitutional actions and, therefore, Rockledge

6

has an actual, concrete injury which is fairly traceable to the Defendants. Rockledge need not stand in the Buckeys' shoes to assert the constitutional claims raised in its complaint. I find that Rockledge has constitutional standing to bring these claims, and I will now consider the issues raised in the Defendants' motion.

## II. *Younger* Abstention

Defendants first argue that Rockledge's complaint should be dismissed under the doctrine of *Younger* abstention, because of the "parallel" proceeding before the Pennsylvania state courts. In *Younger v. Harris*, the Supreme Court held that a federal court should abstain from enjoining or interfering with an ongoing criminal prosecution. *Younger v. Harris*, 401 U.S. 37 (1971). The doctrine has subsequently been expanded to cover quasi-criminal and some civil proceedings as well. *Rio Grande Community Health Center, Inc. v. Rullan*, 397 F.3d 56, 69 (1st Cir. 2005). *Younger* abstention is appropriate when "(1) there is a pending state judicial proceeding; (2) the proceeding implicates important state interests; and (3) the state proceeding affords an adequate opportunity to raise constitutional challenges." *Hi Tech Trans, LLC v. New Jersey*, 382 F.3d 295 (3d Cir. 2004) (quotation omitted). *Younger* abstention is mandatory if these conditions are met. *Rio Grande*, 397 F.3d at 68. The parties do not dispute that the first prong is satisfied by the currently pending state judicial proceeding. They also do not dispute that a Pennsylvania Court of Common Pleas is capable of hearing any arguments as to the constitutionality of the Defendants' actions. Therefore, the application of the *Younger* abstention doctrine must hinge on the second element, interference with an important state interest.

Defendants correctly argue that land use decisions are in many aspects important state policies. *United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 402 (3d Cir. 2003) ("Land-use decisions are matters of local concern."); *Chez Sez III Corp. v. Township of Union*, 945 F.2d 628, 633 (3d Cir. 1991) (discussing state interests in the context of the *Pullman* abstention doctrine); *Heritage Farms, Inc. v. Solebury Township*, 671 F.2d 743, 747 (3d Cir. 1982). The fact that some claims relate to land-use decisions, however, does not automatically cause them to raise "important state interests" that satisfy the second prong of the *Younger* abstention test. *Addiction Specialists, Inc. v. Township of Hampton*, 411 F.3d 399, 409 (3d Cir. 2005). "[T]he only state proceedings . . . that implicate important state interests for *Younger* abstention purposes are those proceedings that relate to the validity of the state and local land use policies themselves." *Id.* at 410.

In *Addiction Specialists*, the plaintiff challenged both the implementation of local land-use ordinances and the constitutionality of the ordinances themselves. *Addiction Specialists*, 411 F.3d at 410. The district court dismissed both types of claims under the doctrine of *Younger* abstention, finding that land-use determinations implicated important state interests. *Id*. at 408. On appeal from that determination, the Third Circuit Court of Appeals held that the district court erred "by treating all of [the plaintiff's] claims equally in conducting its analysis under the second prong of the *Younger* abstention test." *Id.* at 410. The Court held that it was appropriate to abstain from any determination as to the challenges to the zoning regulations themselves. *Id*. at 411 n. 11. As to the claims of selective enforcement of a zoning regulation, however, important state interests were not at issue. *Id.* at 410-11. The court held that *Younger* abstention was not necessary and

8

reversed the district court's dismissal. *Id.* at 411. The Third Circuit Court of Appeals noted that even if the federal claims did not necessarily implicate important state interests, "certain aspects of the requested relief may potentially interfere with the state proceedings." *Id*. at 410. It specifically rejected, however, the argument than an injunction prohibiting the selective enforcement of land-use policies would interfere with state proceedings. *Id.*

In evaluating whether important state interests are at issue in the present case, it is important to distinguish between challenges to the validity of the Wright Township ordinance, and challenges to the enforcement of the ordinance. Applying the analysis of the Third Circuit Court of Appeals in *Addiction Specialists*, I find that important state interests are implicated only as to the challenges to the *validity* of the ordinance. Therefore, the second prong of the *Younger* abstention test is satisfied only as to the claims challenging the ordinance itself. Plaintiff's claims challenging the validity of the ordinance satisfy all three prongs of the *Younger* abstention test, and will be dismissed due to lack of jurisdiction.[4] Because I find that as to the remaining claims important state interests are not implicated, I need not abstain from considering the remaining claims.

## III. Failure to State a Claim

Defendants next argue that the Plaintiff's claims, if true, provide no basis for recovery. Rockledge brings claims with respect to both the Fifth and Fourteenth Amendments. In light of the above application of the *Younger* abstention doctrine, these

---

[4] Plaintiff cites *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988) and argues that a stay, rather than dismissal, is appropriate. As the Supreme Court held in *Deakins*, however, a stay is appropriate only where the state proceeding is incapable of affording the remedy sought. *Id.* Here the same monetary and injunctive relief may be granted in the Pennsylvania proceedings, and therefore, dismissal is the appropriate action.

claims will be analyzed only as to the selective enforcement of the Wright Township ordinance.

A. Substantive Due Process (Count I)

The Fourteenth Amendment provides, in part, that "no State [shall] deprive any person of life, liberty, or property without the due process of law . . . ." To prevail on a claim that a municipality's land use ordinance violates substantive due process, a party must establish (1) a protected property interest, *Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1290 (3d Cir.1993), and (2) government conduct that "shocks the conscience." *United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003). As previously noted, the Supreme Court has recognized that a mortgagee has a protected property interest in its lien on a piece of property. *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983) (mortgagee entitled to due process before pending tax sale impacting interests).

The Court of Appeals for the Third Circuit has held that a land use regulation violates substantive due process only if it "shocks the conscience." *United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 394 (3d Cir. 2003) (*citing County of Sacramento v. Lewis*, 523 U.S. 833 (1998)). *United Artists* overruled *Bello v. Walker*, 840 F.2d 1124 (3d Cir.1988) and its progeny, which held that a land use regulation violated substantive due process if it was "arbitrary, irrational, or tainted by improper motive." *Id.* at 1129. The current "shocks the conscience" standard, which encompasses "only the most egregious official conduct," is much more demanding than the former *Bello* standard. *United Artists*, 316 F.3d at 400. Plaintiff acknowledges that the "shocks the conscience"

standard applies to its claims relating to the enforcement of the Wright Township ordinance. (Plaintiff's Brief in Opp'n at 10.)

In *Key Youth Services v. City of Olathe*, 38 F. Supp. 2d 914 (D. Kan. 1999), the "shocks the conscience" standard was applied to a claim that the city violated substantive due process by denying a special use permit to a corporation that operates youth homes. In dismissing the due process claim, the court noted that "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Id.* at 926. Rather, the *Key Youth Services* court held, "a plaintiff 'must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.'" *Id.* (*quoting Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir.1995)). Here the alleged conduct, while possibly reaching the standard of intentionally or recklessly causing injury while abusing power, falls short of behavior which is shocking to the conscience. Because the alleged conduct does not "shock the conscience," the Defendants' motion will be granted.

B. Procedural Due Process (Count II)

To establish a cause of action for a procedural due process violation, a plaintiff must first prove that a person acting under color of state law deprived him of a protected property interest; and second, he must show that the procedures available to him failed to provide him with due process of law. *See, e.g., Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). Thus, "[i]n order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, *unless* those processes are unavailable or patently inadequate." *Alvin*, 227 F.3d at 116 (emphasis added). As

stated above, Rockledge has alleged a protected property interest via its lien.

"[A] state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a local administrative body.." *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 597 (3d Cir. 1995), overruled on other grounds by *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003). In other words, when a state "affords a full judicial mechanism with which to challenge the administrative decision" in question, the state provides adequate procedural due process, whether or not the plaintiff avails him or herself of the provided appeal mechanism. *Id.* (quoting *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 682 (3d Cir. 1991)).

Rockledge argues that while the Buckeys may have had adequate procedural due process through judicial appeals, as a lien holder "there is no procedure providing notice and opportunity for a hearing under Pennsylvania state law." (Compl. ¶ 37.) Rockledge correctly argues that the judicial appeal mechanism under 53 P.S. § 10916.1 is applicable only to the property owner, not to a party with a lien interest. 53 P.S. § 10916.1 (2009). Because issues of material fact remain as to whether Rockledge had any notice or opportunity to object to the Defendants' alleged conduct, judgment on the pleadings is inappropriate for this claim. Defendants' motion as to Count II will be denied.

C. Takings Clause (Count III)

Defendants' next argue that any Fifth Amendment Takings Clause claim by Rockledge is not yet ripe because there has been no final decision by Wright Township and Rockledge has not exhausted Pennsylvania's procedures for obtaining just compensation. Each of these arguments will be considered in turn.

12

1. Final Determination

Rockledge argues that the Defendants have in substance "taken" its property via regulation that "goes too far." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). To determine if a regulatory taking has occurred, the court must engage "in essentially ad hoc, factual inquiries that have identified several factors -- such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the governmental action -- that have particular significance." *Kaiser Aetna v. United States*, 444 U.S. 164, 175 (1979). "It follows from the nature of a regulatory takings claim that an essential prerequisite to its assertion is a final and authoritative determination of the type and intensity of development legally permitted on the subject property." *Macdonald v. County of Yolo*, 477 U.S. 340, 348 (1986). "A court cannot determine whether a regulation has gone "too far" unless it knows how far the regulation goes." *Id.*

In *Macdonald v. County of Yolo*, the Supreme Court discussed the necessity of a final and authoritative determination as to the regulation. *Macdonald,* 477 at 348. In that case, the plaintiff sought to subdivide his agricultural property into single-family and multifamily residential lots. *Id.* at 342. The defendants, the Yolo County Planning Commission, had rejected the plan for numerous reasons including that it was not consistent with the general plan for the county. *Id.* After this initial rebuff, the plaintiff filed the federal action. *Id.* at 343. The Court held that the submission of one proposal which was rejected did not establish a "final, definitive position regarding how [the Planning Commission] will apply the regulations at issue to the particular land in question." *Id.* at 351. Because the defendants had not been given the opportunity to establish their final position,

13

the Court held that the plaintiff's takings claim was not yet ripe. *Id.* at 352-53.

The Supreme Court has also made it clear, however, that there are no set number of potentially futile proposals that a plaintiff must pursue. "While a landowner must give a land-use authority an opportunity to exercise its discretion, once it becomes clear that the agency lacks the discretion to permit any development, or the permissible uses of the property are known to a reasonable degree of certainty, a takings claim is likely to have ripened." *Palazzolo v. Rhode Island*, 533 U.S. 606, 620 (2001). In *Palazzolo*, the Court found that two rejections were sufficient to establish a final position. *Id*. at 609-10. In that case, the plaintiff's property was a protected wetland, and the Court held that the defendants' "decisions [made] plain that the agency interpreted its regulations to bar [the plaintiff] from engaging in any filling or development activity." *Id*. at 609.

Applying these decisions to the present case, it is clear that Wright Township has not yet been given the opportunity to make a final determination. Similar to the situation in *Macdonald*, Rockledge alleges that only one proposal was suggested and denied. (Compl. ¶ 25) The alleged rejection by Wright Township states only that no permit would be issued until all violations were resolved. (Compl. ¶ 25.) Specifically, the Township believed that water drainage issues needed to be resolved before any building permits could be issued. (Compl. ¶ 28.) It is not alleged that there is a final policy permitting no development on Lot 89, distinguishing this case from the situation in *Palazzolo*. The takings claim requires that the court be able to determine the full scope of the regulation. Based on the record before this Court, Wright Township has not yet been given the opportunity to make a final determination, it thus this claim is not yet ripe.

The Court will not, however, grant the Defendants' motion for judgment on the pleadings on this issue. Where the court cannot determine the scope of the taking, the appropriate relief is to dismiss the claim for lack of ripeness, not to grant judgment against a party. *Sameric Corp. V. City of* Philadelphia, 142 F.3d 582, 598 (3d Cir. 1998); *see Carroll v. Twp. of Mount Laurel*, 315 Fed. App'x 402 (3d Cir. 2009) (unpublished). Defendants' motion will be denied as to Count III, but the claim will be dismissed as not yet ripe.

2. Exhaustion of Just Compensation Claim

"A plaintiff must first 'seek compensation through the procedures the State has provided for doing so' before asserting a federal takings claim." *Chainey v. Street*, 523 F.3d 200, 222 (3d Cir. 2008) (citing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson*, 473 U.S. 172, 194 (1985)). "Pennsylvania's Eminent Domain Code provides inverse condemnation procedures through which a landowner may seek just compensation for the taking of property." *Id.* (citing 26 P.S. §§ 308, 502(c), 709). Rockledge admits that it has never sought just compensation using the procedures provided by the Commonwealth of Pennsylvania. (Plaintiff's Brief in Opp'n at 13.) Instead, Rockledge argues that it cannot avail itself of the inverse condemnation procedures because it is not a landowner. In light of the previous discussion that the takings claim is not yet ripe, I need not resolve the issue of whether Rockledge has exhausted all required Pennsylvania's inverse condemnation procedures.

15

**CONCLUSION**

Because the challenges raised by Rockledge as to the validity of the Wright Township ordinance could interfere with important state interests currently being adjudicated in the parallel proceedings before the Pennsylvania courts, I will dismiss these claims under the *Younger* abstention doctrine due to lack of jurisdiction. I will also dismiss Rockledge's claims at Count III as not ripe because the Defendants have not been given the opportunity to exercise their discretion to make a final determination. Defendants' motion as to substantive due process will be granted because the facts as stated by Rockledge fail to support recovery. Defendants' motion will be denied as to procedural due process because material issues of fact remain as to the process Rockledge received.

An appropriate Order follows.


| January 13, 2010 | /s/ A. Richard Caputo |
|---|---|
| Date | A. Richard Caputo |
| | United States District Judge |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROCKLEDGE DEVELOPMENT CO.,

    Plaintiff,

    v.

WRIGHT TOWNSHIP, et al.,

    Defendants.

CIVIL ACTION No. 3:08-CV-2064

(JUDGE CAPUTO)

## ORDER

Now, this  13th  day of January, 2010, it is **HEREBY ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 10) is **GRANTED** in part and **DENIED** in part as follows:

(1) Plaintiff's Complaint (Doc. 1) is **DISMISSED** as to all claims challenging the validity of the Wright Township zoning ordinance because this Court will abstain from exercising jurisdiction.

(2) As to Count I, Defendants' motion is **GRANTED**.

(3) As to Count II, Defendants' motion is **DENIED**.

(4) As to Count III, Defendants' motion is **DENIED**, but the Count is **DISMISSED** as not yet ripe.

                                                          /s/ A. Richard Caputo  
                                                          A. Richard Caputo  
                                                          United States District Judge